IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA DODSON, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-07-372-HE |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff Teresa Dodson instituted this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. Consistent with 28 U.S.C. § 636(b)(1)(B), the case was referred to Magistrate Judge Doyle W. Argo, who recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings. The magistrate judge found the administrative law judge ("ALJ") failed to follow correct legal standards in evaluating the medical evidence. He concluded the ALJ did not identify the weight he gave the medical opinions of the plaintiff's treating physicians or explain why he did not give them controlling weight. He also found that the ALJ failed to address the weight given the opinion of the occupational therapist, erred in his treatment of the plaintiff's bilateral carpal tunnel syndrome by not incorporating any limitations stemming from that impairment into the residual functional capacity finding, and did not address the opinions of Drs. Morgan and Adham or the weight given to them.

1

The parties, having failed to object to the Report and Recommendation, waived their right to appellate review of the factual and legal issues it addressed. <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1059-60 (10th Cir. 1996). *See* 28 U.S.C. § 636(b)(1)(C); LCvR72.1. Accordingly, the court adopts Magistrate Judge Argo's Report and Recommendation, **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with the Report and Recommendation, a copy of which is attached to this order.

**IT IS SO ORDERED**.

Dated this 26th day of July, 2008.

JOE HEATON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA DODSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-07-372-HE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. __). As the parties have briefed their positions, the matter is at issue. For the following reasons, it is recommended that the decision of the Commissioner be reversed and the matter be remanded for further administrative proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on September 20, 2001, with a protective filing date of September 7, 2001, alleging a disability onset date of October 27, 1998. Tr. 48–51, 82. Her application was denied on initial consideration and on reconsideration at the administrative level. Tr. 29-30, 31-34, 37-38. Pursuant to Plaintiff's

request, a hearing was held before an administrative law judge on April 23, 2003. Tr. 39, 325-38. The administrative law judge issued his decision on May 28, 2003, finding that Plaintiff was not disabled within the meaning of the Social Security Act, and thus, she was denied benefits. Tr. 13-15, 16-23. The Appeals Council denied Plaintiff's request for review on April 30, 2004. Tr. 5-7. Plaintiff then brought an action in this Court seeking judicial review of the Commissioner's final decision, and on July 14, 2005, United States Magistrate Judge Bana Roberts remanded the matter to the Commissioner for further administrative proceedings. Tr. 370, 371-78.

Following the remand, the administrative law judge held a supplemental hearing on April 10, 2006. Tr. 439-58. Plaintiff appeared in person with her attorney, and offered additional testimony in support of her application. Tr. 441-50. A vocational expert also testified at the request of the administrative law judge. Tr. 383-84, 450-56. The administrative law judge issued a second decision on May 21, 2006, again finding that Plaintiff was not disabled within the meaning of the Social Security Act, and thus she was not entitled to benefits. Tr. 350-52, 353-59. The Appeals Council denied Plaintiff's request for review on January 30, 2007, and therefore the decision of the administrative law judge became the final decision of the Commissioner. Tr. 339-41.

## II. STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

We review the agency's decision to determine whether the factual findings are

> supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). The claimant bears the burden to establish a prima facie case of disability at steps one through four. Id. at 751 & n.2. If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience. Id. at 751.

### III. THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled on remand, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 354-55. He first found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. Tr. 355. At steps two and three, the administrative law judge found that Plaintiff suffers from degenerative disc disease and carpal tunnel syndrome bilaterally,

3

and found that these impairments were severe, but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4. Tr. 355-56. The administrative law judge next found that, as of the date her insured status expired, Plaintiff had a less than sedentary residual functional capacity to lift/carry ten pounds occasionally and up to ten pounds frequently, stand and/or walk for a total of at least two hours in an eight hour workday, sit less than about six hours in an eight hour workday, and push and/or pull unlimited other than as shown for lift and/or carry. Tr. 356. Based on this residual functional capacity assessment, the administrative law judge found at step four of the sequential evaluation process that Plaintiff was not able to perform her past relevant work. Tr. 357. Considering Plaintiff's age, education, experience, residual functional capacity, and the testimony of the vocational expert, the administrative law judge concluded that Plaintiff is not disabled. Tr. 357-58. Accordingly, the administrative law judge found that Plaintiff was not disabled. Tr. 359.

### IV. PLAINTIFF'S ARGUMENTS ON APPEAL

Plaintiff raises three issues for judicial review. She first claims the administrative law judge failed to accord proper weight to medical source opinions bearing on her residual functional capacity and, thus, did not follow the dictates of Judge Roberts' memorandum opinion and order. Plaintiff's Opening Brief, pp. 11-16. Second, Plaintiff alleges the administrative law judge's finding that she could perform other work is erroneous. Id. at 16-18. Finally, she contends the administrative law judge erroneously found she had transferrable skills. Id. at 19-21.

4

## V. DISCUSSION

The undersigned will mainly limit the discussion to the first of the issues raised by Plaintiff - the administrative law judge's failure to identify the weight accorded to medical opinions - as that issue is dispositive of the appeal. In connection with this point of error, Plaintiff argues the administrative law judge did not properly weigh or consider all of the medical source opinions pertaining to her ability to sustain regular work activity. Plaintiff's Opening Brief, pp. 12-13. She contends the administrative law judge mentioned some of the opinions concerning limitations relating to her work abilities, but did not discuss the weight accorded to the various opinions which makes it impossible to review whether appropriate weight was placed on the opinions. Id. at 13-15. She also complains controlling weight was not given to certain opinions entitled to such weight. Id. at 15-16.

The Commissioner responds by arguing that the administrative law judge thoroughly and properly addressed the medical evidence. Response Brief, p. 5. The Commissioner points to specific portions of the decision where the administrative law judge discussed the relevant medical evidence, and also argues that the administrative law judge's obligation to identify the weight placed upon the medical opinions was decreased because his residual functional capacity finding did not conflict with them. Id. at 5-8.

The Social Security Administration's regulations provide administrative law judges with specific guidance concerning how medical opinions must be weighed and how a decision should show that the administrative law judge undertook the requisite analysis when assigning weight to medical opinions. In deciding how much weight to give the opinion of

5

a treating physician, an administrative law judge must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). An administrative law judge must give a treating physician's opinion controlling weight if it is both (1) "well- supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."[1] Id. (quotation omitted). After considering the requisite factors, the administrative law judge must "give good reasons" for the weight ultimately assigned to the opinion. 20 C.F.R. § 404.1527(d)(2). "[I]f the [administrative law judge] rejects the opinion completely, he must . . . give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (internal quotation marks omitted). An administrative law judge "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and emphasis omitted). The Tenth Circuit Court of Appeals has made it clear that an administrative law judge's failure to delineate findings

---

[1] Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the administrative law judge's attention which tend to support or contradict the opinion.

6

regarding the weight given to medical opinions from treating sources is grounds for remand because, without these findings, the decision cannot be properly reviewed. See Watkins, 350 F.3d at 1300; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (holding that because the administrative law judge failed to explain or identify claimed inconsistencies, reasons for rejecting that opinion were not "sufficiently specific" to enable meaningful review).

Plaintiff's medical file shows she suffered a work-related back injury in October 1998. Tr. 247, 263. Subsequent examinations revealed numerous problems with Plaintiff's spine, including degenerative disc disease and sciatica. Tr. 253, 257. Initially, Plaintiff received treatment from Dr. William Harris and Dr. J.P. Sullivan, including epidural back injections. Tr. 131-49, 250-54, 259, 261. In April, 1999, Plaintiff came under the care of her main treating physician, Dr. Emery Reynolds. Tr. 247-49, 302. Dr. Reynolds referred Plaintiff to Dr. J. Pat Livingston for a second opinion as to treatment options. Tr. 242, 302. Dr. Livingston noted that Dr. Reynolds had discussed with Plaintiff the options of conservative treatment versus surgical fusion. Tr. 304. Dr. Livingston agreed that surgery was a treatment option, but cautioned that it would not entirely resolve Plaintiff's back problems. Tr. 306. He explained that whether or not Plaintiff underwent surgery, she would have some persistent pain. Tr. 305. He added that he told Plaintiff that she would have to determine whether her pain was such that she wanted the surgical option. Tr. 306. Dr. Livingston also expressed the opinion that he did not believe that Plaintiff would be able to return to any type of physical job requiring any repetitive bending, stooping, twisting, lifting or "the like"

regardless of whether she had surgery. Tr. 305. He also added she would be restricted from prolonged sitting or standing without breaks. Tr. 305. Accordingly, Plaintiff initially chose to treat her condition with conservative pain management. Tr. 239.

Thus, on Dr. Reynolds' referral, Plaintiff entered the Back Oklahoma rehabilitation program in December 1999 and completed it one month later. Tr. 201. Plaintiff saw Dr. Reynolds thereafter, and at the end of January 2000 he released her back to work with a ten pound weightlifting restriction, no overhead work, and change in position every thirty minutes. Tr. 238.

However, Plaintiff was unable to work because of back and right leg pain, and began to see Dr. Reynolds again in May 2000. Tr. 236. Eventually Plaintiff underwent a spinal laminectomy and fusion in September 2000, with Drs. Reynolds and Livingston performing the surgery. Tr. 226-29. After her back surgery, Plaintiff continued to experience pain in her back, neck, legs, and arms, which was treated with physical therapy and injections. Tr. 102-30, 167-68, 178-94. In June 2001, while following the results of Plaintiff's back surgery on her pain level, Dr. Reynolds concluded Plaintiff was limited from lifting, bending, twisting, pushing, and pulling, that she was not currently available for employment, and that she would not have the ability to return to her previous work in the food service industry. Tr. 186. By December 2001, Dr. Reynolds was of the opinion that Plaintiff might be able to return to work with a 20 pound weightlifting restriction, and no repetitive bending or lifting, and no stationary positions for greater than 30 minutes. Tr. 179.

In March 2002, Dr. Reynolds determined Plaintiff had reached maximum medical improvement, and noted that she was rated at a sedentary exertional level following her functional capacity evaluation. Tr. 167. He recommended occupational retraining. Tr. 167. Dr. Reynolds' recommendation was based at least in part upon a Physical Work Performance Evaluation Summary conducted by an occupational therapist, Liana Dewberry. Tr. 169-76. Ms. Dewberry concluded Plaintiff was capable of performing sedentary work, Tr. 169, 176, and she assessed specific limits on Plaintiff's other exertional abilities. Tr. 170.

Two agency examiners reviewed Plaintiff's medical records after her back surgery was completed and executed Residual Functional Capacity Assessment forms setting forth opinions as to what vocational abilities Plaintiff retained. On one form completed in February 2002, the examiner limited Plaintiff to occasionally lifting no more than 20 pounds, frequently lifting no more than ten pounds, standing for approximately six hours of an eight hour workday, sitting for six hours of an eight hour workday, and assessed limited pushing and pulling in her upper extremities, with no postural, manipulative, or other restrictions. Tr. 160-63. In April 2002, a different agency medical consultant assessed the same lifting, standing, and sitting restrictions, but concluded Plaintiff had no limitations on pushing and pulling. Tr. 294-300.

In determining that one of Plaintiff's severe impairments was degenerative disc disease, the administrative law judge discussed many of the records contained in Plaintiff's medical file. Tr. 355-56. He then found that Plaintiff retained the residual functional capacity to lift and carry ten pounds occasionally and up to ten pounds frequently; stand or

9

walk for a total of at least two hours in an eight hour work day; sit less than about six hours in an eight hour workday; and assessed no push or pull limitations other than those for lifting and carrying. Tr. 356.

As Plaintiff contends, the administrative law judge did not adequately discuss the relevant records or the weight accorded to pertinent opinions, and this failure necessitates remand. For example, post-operatively, Dr. Reynolds opined initially that Plaintiff would be limited in her lifting, bending, twisting, pushing, and pulling abilities. Tr. 186. He later determined she should be restricted to no repetitive bending, lifting, and should not stay in stationary positions for longer than 30 minutes. Tr. 179. Dr. Livingston made a similar recommendation that Plaintiff refrain from performing any job that required repetitive bending, stooping, twisting, or lifting, and that she should be restricted against prolonged sitting or standing without breaks. Tr. 305. The administrative law judge's residual functional capacity determination does not contain any limitations on Plaintiff's bending, twisting and stooping. Tr. 356. Significantly, the administrative law judge also did not make an accommodation for Dr. Reynolds' and Dr. Livingston's conclusion concerning Plaintiff's ability to sustain prolonged periods of standing and sitting without breaks. See id. It was error for the administrative law judge to fail to incorporate limitations addressing these definitive limitations set forth in Plaintiff's physicians' medical opinions without explaining the weight given to the opinions and the basis for apparently rejecting these portions of them. See Watkins, 350 F.3d at 1300-1301; see also Langley, 373 F.3d at 1123.

10

Citing <u>Howard v. Barnhart</u>, 379 F.3d 945, 947 (10th Cir. 2004), the Commissioner contends that the administrative law judge's conclusion that Plaintiff has the residual functional capacity to perform less than sedentary work is consistent with Dr. Reynolds' opinion and, therefore, decreased the need to expressly discuss the weight accorded to Dr. Reynolds' opinion. Response Brief, p. 5. The Commissioner is correct that when there is no need "to reject or weigh evidence unfavorably in order to determine a claimant's [residual functional capacity], the need for express analysis [of the relevant medical evidence] is weakened." <u>Howard</u>, 379 F.3d at 947. But here the administrative law judge's residual functional capacity assessment implicitly rejects, or at least unfavorably weighs, some of Dr. Reynolds' and Dr. Livingston's findings, including their opinions that Plaintiff should not engage in work that required repetitive bending, stooping or twisting and their findings that she should not maintain stationary positions for periods exceeding 30 minutes. <u>Compare</u> Tr. 179, 186, 305 <u>with</u> Tr. 356. Indeed, one of the medical consultants who completed one of the residual functional capacity forms, which appears to have been largely adopted in the decision, noted that his conclusion on Plaintiff's ability to perform certain exertional limitations was not as restrictive as the limitations placed on her by Dr. Reynolds. Tr. 300. The decision is deficient and the matter must be remanded because the administrative law judge did not explain why he did not give controlling weight to Dr. Reynolds' and Dr. Livingston's opinions or how much weight the opinions were given and the basis for doing so.

11

Moreover, Plaintiff correctly argues the administrative law judge should have addressed the treatment given to Ms. Dewberry's findings with respect to her vocational limitations. "Medical opinions" are defined as "judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Therapists, nurse practitioners, and the like, are not "acceptable medical sources," and thus their opinions are not eligible for controlling weight. See 20 C.F.R. §§ 404.1513, 404.1527(a)(2); Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[2] However, while an opinion from a medical source who does not qualify as an "acceptable medical source" may not be used to establish the existence of an impairment, it may provide insight into the severity of an impairment and how an impairment affects an individual's ability to function. Social Security Ruling 06-03p, 2006 WL 2329939, at *2-3. Accordingly, opinions from medical sources who are not "acceptable medical sources" should be considered and given an appropriate weight after considering the factors set forth in 20 C.F.R. § 404.1527(d). Id. at *4-5; see also Bowman v. Astrue, 511 F.3d 1270, 1275 (10th Cir. 2008) (remanding decision to Commissioner for consideration of registered nurse's opinion, in light of Social Security Ruling 06-03p).

---

[2] Although Social Security Ruling 06-03p had not been issued at the time the administrative law judge rendered his decision in this case, the ruling is merely a "clarification of existing SSA policies," Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007), and the Tenth Circuit Court of Appeals has applied it to decisions predating it. See Bowman v. Astrue, 511 F.3d 1270, 1275 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007). Thus, the Ruling is applicable here.

12

Like Dr. Reynolds, Ms. Dewberry concluded Plaintiff's back condition interfered with her exertional abilities. Tr. 169-76. Specifically, she determined Plaintiff should be restricted to sedentary work, and have limitations on squatting, lifting, kneeling, bending, climbing, and that she needed to be able to change static positions frequently. Tr. 169-71. She also detected decreased bilateral grip strength with occasional upper extremity pain, and noted Plaintiff experienced bilateral hand fatigue with repetitive use. Tr. 171, 175. The administrative law judge briefly mentioned the fact that Plaintiff had been rated at a sedentary level of work, but he did not identify what weight he gave to the opinions of Ms. Dewberry or mention any of her more specific vocational findings. Tr. 356. It is thus impossible for the undersigned to discern what weight the administrative law judge placed on Ms. Dewberry's findings which should have been considered at least insofar as they pertained to Plaintiff's functional abilities. See Bowman, 511 F.3d at 1275.

The administrative law judge also erred in his treatment of Plaintiff's bilateral carpal tunnel syndrome, which is clearly documented in the record. Tr. 152, 436. She began to experience wrist pain in February 2002. Tr. 273. Plaintiff's primary care physician, Dr. William Wilson, found the existence of severe degenerative post traumatic changes, and treated Plaintiff's wrist pain with medication, splints, soaks, and massages. Tr. 266-72. Dr. Wilson also referred Plaintiff to Dr. Charles Morgan for a nerve conduction study which revealed "convincing evidence for bilateral carpal tunnel syndrome, worse on the left than on the right." Tr. 314-16. He recommended treatment with splints and surgery if the splints were not successful. Tr. 315-16. In September 2003, Dr. Wilson rendered an opinion

13

describing Plaintiff's bilateral carpal tunnel syndrome, which caused numbness and tingling in both arms, as a disabling condition unlikely to improve with further treatment. Tr. 418. In September 2004, Plaintiff visited Dr. Mehdi Adham concerning her carpal tunnel syndrome. Tr. 433. Dr. Adham performed a physical examination which resulted in a positive Tinel and Phalen test on the right side, along with a Tinel at the elbow over the ulnar nerve with a positive flexion test. Tr. 434. Plaintiff displayed an overall good range of motion in her fingers, wrist, and elbow. Id. On the left side she had a negative Tinel and Phalen, but all of her fingers were numb. Id. She experienced stiffness in the wrist with manipulation which, in turn, caused pain. Id. She had a negative Tinel and Flexion test at the elbow. Id. Overall, Dr. Adham assessed bilateral carpal tunnel syndrome, worse on the left than right, right cubital canal syndrome, and malunion of the distal radius with arthritis. Id. He recommended treatment with a Medrol dose pack, neuromuscular glide exercises, Naprosyn, and indicated she would most likely need surgery. Id.

Dr. John Munneke examined Plaintiff in December 2003 in connection with her workers' compensation claim. Tr. 436-38. He examined Plaintiff's wrists and back and assessed a residual disability rating of 60%, which represented an increase of 16% from her previous rating. Tr. 437-38. Dr. Munneke also opined Plaintiff's wrist and back issues were synergistic, and that she would not be able to return to the workforce without vocational rehabilitation and retraining. Tr. 438.

In his decision, the administrative law judge mentioned a 2003 letter from Dr. Wilson, wherein he remarked that Plaintiff suffered from bilateral carpal tunnel syndrome which

14

manifested itself with numbness and tingling in both arms. Tr. 356, 418. At step two the administrative law judge concluded that Plaintiff's bilateral carpal tunnel syndrome was a "severe" impairment. Tr. 355. In finding that Plaintiff's bilateral carpal tunnel syndrome was severe, the administrative law judge, by definition, also concluded it affected Plaintiff's ability to perform work-related activities. See 20 C.F.R. § 404.1521(a). Yet the administrative law judge did not incorporate any limitations stemming from this impairment into the residual functional capacity finding. See Tr. 356. This failure also necessitates reversal and remand for further proceedings because "[i]t is beyond dispute that an [administrative law judge] is required to consider all of the claimant's medically determinable impairments, singly and in combination." Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006).

Furthermore, the administrative law judge did not discuss the records of Dr. Morgan or Dr. Adham at all. Both of these physicians rendered an opinion pertinent to Plaintiff's bilateral carpal tunnel syndrome, suggesting that the impairment would result in vocational limitations. See Tr. 314-16, 433-34. The administrative law judge did not incorporate any manipulative limitations into the residual functional capacity assessment accounting for Plaintiff's carpal tunnel syndrome, and because he did not address these opinions or the weight given to them, it is unclear why or whether this was proper. This also necessitates remand because, in addition to discussing the weight given to pertinent medical opinions, the "record must demonstrate that the [administrative law judge] considered all of the evidence . . . [including] . . . the uncontroverted evidence he chooses not to rely upon, as well as

15

significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The Commissioner argues, as to Dr. Adham's opinion, that it was rendered after Plaintiff's insured status expired and therefore is of no relevance to the determination. Response Brief, p. 8. Contrary to the Commissioner's argument though, "retrospective diagnosis and subjective testimony can be used to diagnose a physical or mental condition . . . ." Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991), and the relevant analysis concerns "whether the claimant was actually *disabled* prior to the expiration of her insured status." Potter v. Sec'y of Health & Human Servs., 905 F.2d 1346, 1348-49 (10th Cir. 1990) (per curiam) (emphasis in original). Thus, Dr. Adham's opinion is neither categorically relevant or irrelevant and, at a bare minimum, it should have been considered and discussed along with the reasons for the weight assigned to it. This is especially true given that Plaintiff had a diagnosis, based upon objective evidence, of bilateral carpal tunnel syndrome prior to the date her insured status expired. Tr. 314-16, 418.

The administrative law judge's failure to follow correct legal standards in evaluating the medical evidence requires that the Commissioner's decision be reversed and the matter be remanded. It is worth mentioning however, that the administrative law judge's question asking the vocational expert to identify jobs Plaintiff could perform given her sedentary residual functional capacity was deficient because "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commisioner]'s decision." Hargis v. Sullivan, 945 F.2d

16

1482, 1492 (10th Cir. 1991) (quotation omitted). While the administrative law judge found that Plaintiff was limited to a less than sedentary exertional level, his hypothetical to the vocational expert was simply "does she have skills that would transfer to other kinds of sedentary work." Tr. 451. Thus, the hypothetical did not include his less than sedentary exertional level. Further, in response to the hypothetical, the vocational expert testified, given Plaintiff's vocational background, she could perform the job of shelter manager for a social agency. Tr. 451. The vocational expert also indicated that job would require frequent use of the fingers and hands and bilateral functional ability in both the hands and arms. Tr. 454. Given the fact that the administrative law judge found that Plaintiff suffers from bilateral carpal tunnel syndrome, it is certainly not clear that Plaintiff could perform the jobs identified by the vocational expert.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the administrative law judge failed to apply correct legal standards in the decision. Accordingly, it is recommended that the final decision of the Commissioner of Social Security Administration be reversed and the matter be remanded for further administrative proceedings consistent with this Report and Recommendation. The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by July 15, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues

referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 25th day of June, 2008.**

                                                *[signature]*
                                                DOYLE W. ARGO
                                                UNITED STATES MAGISTRATE JUDGE